William D. BROWN, Plaintiff,

v.

**C.A. CUNNINGHAM, Barry Hawlk and Walter W. Redman, Defendants.**

**Civ. A. No. 88–648–JJF.**

United States District Court,
D. Delaware.

Feb. 14, 1990.

William D. Brown, pro se.

Michael F. Foster, State Sol., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

FARNAN, District Judge.

### I. FACTS

On November 18, 1988, plaintiff William D. Brown ("Brown"), a prisoner at Delaware Correctional Center ("DCC"), filed suit under 42 U.S.C. § 1983 alleging that he was "intentionally deprived ... of the rights, privileges and immunities secured to plaintiff by the Fourteenth Amendment of the Constitution of the United States...." Complaint ¶ 1 (Docket Item 2). The violation of Brown's rights allegedly occurred when he was transferred from the general population at DCC to administrative segregation without being given notice and an opportunity to argue against the transfer. In particular, he claimed a "right to a particular classification which [could] not be infringed except upon the occurrence of specified events pursuant to the Title 11 Del.C. § 6535, the DCC Inmate Reference Manual, and normal practice and policy at DCC". *Id.* at 2. As a remedy, he requested an injunction and an award of compensatory damages.

On November 18, 1988, the Court referred the case to the United States Magistrate and also granted Brown *in forma pauperis* status. Thereafter the Magistrate issued a Report and Recommendation urging dismissal of the plaintiff's complaint without prejudice pursuant to 28 U.S.C. § 1915(d), a statute allowing for the dismissal of frivolous claims brought by an *in forma pauperis* plaintiff. Magistrate's Report and Recommendation at 3 (Docket Item 5). The Report and Recommendation, relying on *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), reasoned that the transfer of an inmate to a more restrictive environment does not implicate a liberty interest within the meaning of the due process clause of the Fourteenth Amendment unless a state statute or state regulation gives a prisoner a liberty interest in a particular classification. *Id.* at 2. The Report and Recommendation concluded that "[n]o such liberty interest has been found to exist in Delaware" and therefore recommended that the Court find that Brown failed to state a claim under the due process clause of the Fourteenth Amendment. *Id.* at 2–3.

Brown filed timely objections to the Report and Recommendation, arguing that the Magistrate had erred in three ways. First, he claimed that the Magistrate had not properly analyzed Del.Code Ann. tit. 11, § 6535. Section 6535 grants a general power to the Delaware Department of Correction to promulgate rules and regulations for the operation of prisons. In support of this claim, Brown relies on a Report and Recommendation from then-Magistrate Powers in *Fridge v. Dixon*, C.A. No. 83–193–LON (D. Del. January 30, 1985) (Order adopting Report and Recommendation dated November 13, 1984). *Fridge* found a liberty interest for inmates and pretrial

detainees in the context of punitive pre-hearing transfers to isolation. *Fridge*, Magistrate's Report and Recommendation at 11.

Second, Brown asserts that the Magistrate's Report and Recommendation in *Graham v. Redman*, C.A. No. 87–423–JLL (D. Del. May 30, 1989) (Memorandum Opinion and Order declining to follow Magistrate's Report and Recommendation dated September 13, 1988), prevents her from finding that he has no liberty interest. In her Report and Recommendation in *Graham*, the Magistrate concluded that a prisoner had a liberty interest in remaining in an existing classification. *Graham*, Magistrate's Report and Recommendation at 4. Third, Brown argues that the actions taken against him violated the equal protection clause of the Fourteenth Amendment.

## II. DISCUSSION

The plaintiff's objections require the Court to address two questions. First, the Court must determine whether the plaintiff has stated a claim under the due process clause of the Fourteenth Amendment. In doing so, the Court will examine state statutes, state administrative regulations and state rules to discern whether the plaintiff has a liberty interest in a particular classification. Second, the Court must decide whether the plaintiff has stated a claim under the equal protection clause of the Fourteenth Amendment. The Court will consider each question *seriatim*.

### 1. *Liberty Interest Claim*

"[T]he dispositive question in determining whether a state rule creates a protected liberty interest is whether it 'plac[es] substantive limitations on official discretion.'" *Stephany v. Wagner*, 835 F.2d 497, 500 (3d Cir.1987) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983)), *cert. denied*, 487 U.S. 1207, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988). This "substantive limitation" will be determined by the use of "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed" and by examining whether there is a provision in either state rules and regulations or state statutes requiring that administrative segregation will not occur unless certain events come to pass. *Hewitt v. Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983). The Court will first examine the Delaware statute which Brown contends creates a liberty interest and then turn to an analysis of the pertinent rules and regulations.

Brown claims that Del.Code Ann. tit. 11, § 6535 creates a substantive limitation on the discretion of prison officials. Section 6535 provides as follows:

The Department [of Correction] shall promulgate rules and regulations for the maintenance of good order and discipline in the facilities and institutions of the Department, including procedures for dealing with violations. A copy of such rules shall be provided to each inmate. There shall be a record of charges of infractions by inmates, any punishments imposed and of medical inspections made.

The Court concludes that the statute only grants to the Department of Correction the power to promulgate rules and regulations. That mere grant of authority to the Department of Correction does not create a liberty interest in the plaintiff's right to be free from administrative segregation. Therefore, if a liberty interest exists, it must arise from the rules or regulations promulgated by the Department of Correction, as the Court found in *Fridge v. Dixon*, C.A. No. 83–193–LON (D. Del. January 30, 1985) (Order adopting Report and Recommendation dated November 13, 1984).

In *Fridge*, the prisoner/plaintiff had been placed in pre-hearing detention for seven days before he was informed of the disciplinary charges brought against him. The Magistrate found a liberty interest created by § 330.230 of the DCC's Code of Penal Discipline, rules promulgated by the Department of Correction pursuant to its authority granted by § 6535. *Fridge*, Magistrate's Report and Recommendation at 10–11. When *Fridge* was decided, the Code of Penal Discipline provided in § 330.230 that "the following steps *will* be

undertaken" when a prisoner is charged with a violation of prison rules. *Fridge*, Magistrate's Report and Recommendation at 10 (emphasis added). Section 330.233 defined one of those steps as follows:

> Until the hearing, the inmate is entitled to remain in his existing status, unless he becomes a sufficient threat to other inmates, staff members or himself to warrant pre-hearing detention.

*Fridge*, Magistrate's Report and Recommendation at 10. Magistrate Powers concluded that "the language used is of an unmistakably mandatory character, requiring that certain procedures 'will be undertaken' and that pre-hearing detention will not occur absent specific conditions...." *Fridge*, Magistrate's Report and Recommendation at 10–11.

Neither the Code of Penal Discipline or the administrative regulations promulgated pursuant to § 6535 contain similar language concerning administrative segregation. In fact, rather than creating an immutable right to a particular classification, the regulations vest discretion in the Department of Correction to determine an inmate's classification.

> The Institutional Classification Committee consists of the four Assistant Bureau Chiefs and the Classification Administrator. The Assistant Bureau Chief for Special Programs shall serve as Chairperson. The Committee shall meet together or in subcommittees to consider and decide on the appropriate treatment programs and institutional settings for all residents in the custody of the Department [of Correction].

Administrative Regulations, Department of Correction, § 1.14 (1978). Similarly, no provision in the Inmate Reference Manual contains language on administrative segregation which could be construed to create a liberty interest such as the Court found in *Fridge*.

■ Despite the absence of a liberty interest created by state statute or state rules and regulations, Brown insists that a liberty interest has been created by the Magistrate's Report and Recommendation in *Graham v. Redman*, C.A. No. 87–423–

JLL (D. Del. May 30, 1989) (Memorandum Opinion and Order declining to follow Magistrate's Report and Recommendation dated September 13, 1988). In *Graham*, the Magistrate recommended that the Court find a liberty interest in a prisoner's right to remain in his existing classification. *Graham*, Magistrate's Report and Recommendation at 4. Brown asserts, relying on the principles of *res judicata*, that this Report and Recommendation prevents the Magistrate from finding his liberty interest claim meritless. Plaintiff's argument, one more properly categorized as offensive non-mutual collateral estoppel or as *stare decisis*, is unavailing because the Report and Recommendation was never adopted by the District Judge who, upon review of the Report and Recommendation, concluded that no liberty interest could be found. *Graham*, Memorandum Opinion at 5–6. The Court similarly concludes that in this case no liberty interest can be held to exist and that Brown's liberty interest claim must be dismissed.

#### 2. *Equal Protection Claim*

■ Brown's equal protection challenge to the Magistrate's Report and Recommendation is equally without merit. Brown has not pled any facts which would allow his complaint to be construed as one charging a violation of equal protection. He has not alleged that similarly situated individuals were treated differently than him. "The Constitution does not require things which are different in fact ... to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940). The Court therefore concludes that the plaintiffs equal protection claim must be dismissed.

### III. CONCLUSION

Pursuant to 28 U.S.C. § 636(b)(1), the Court conducted a *de novo* review of all documents filed in this case. As a result of the review, the Court will adopt the Report and Recommendation in whole and will dismiss this case without prejudice pursuant to 28 U.S.C. § 1915(d). *See Neitzke v. Williams*, — U.S. —, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989) (examples of

claims which may be dismissed pursuant to § 1915(d) include "claims of infringement of a legal interest which clearly does not exist, like [a prisoner's] claim that his transfer within the reformatory violated his rights under the Due Process Clause").

An Order will be entered accordingly.